Filed 6/28/22  Peavy v. Cal. Victim Compensation etc. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| GARY L. PEAVY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA VICTIM COMPENSATION CLAIMS BOARD,<br><br>    Defendant and Respondent. | D079193<br><br><br><br>(Super. Ct. No. 37-2020-00028849-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Gary L. Peavy, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Danielle F. O'Bannon, Assistant Attorney General, Richard F. Wolfe and Tim J. Vanden Heuvel, Deputy Attorneys General for Defendant and Respondent.

Under California law a crime victim may seek compensation from the Victim Compensation Board (Board) for certain economic losses. (Gov. Code,[1] § 13950 et seq.) A lost income claim requires medical evidence to "verify" the disability is "a direct result" of the crime. (Cal. Code. Regs., tit. 2, § 649.32, subd. (g).) Judicial review of a final Board decision is by s petition for a writ of mandate filed in the superior court. (§ 13960, subd. (a).)

In this case, Gary Peavy appeals from a judgment denying his petition for a writ of mandate challenging the Board's denial of his lost income claim. We affirm because Peavy submitted no medical evidence to support a finding that his claimed disability was a direct result of any crime.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Domestic Violence Incident*

On October 7, 2018, Peavy's girlfriend, Diane N., caught him driving with another woman.[2] She followed Peavy's car until he parked in front of a police station. Exiting her car she yelled, "[H]e fucking over me! Every time I turn around he's with a different woman!" She shoved and grabbed Peavy's left shoulder. A police officer witnessed the melee and arrested Diane for domestic battery. According to the police report, Peavy had "no visible or reported injuries" and he declined to press charges.

B. *Summary of Peavy's Medical Treatment*

Three days later on October 10, Peavy sought medical attention at a hospital emergency room—but not for a left shoulder injury from a battery. Rather, he complained of right shoulder pain from being tased earlier that

---

[1]    Undesignated statutory references are to the Government Code.

[2]    Dates are in 2018 unless otherwise specified.

day.[3]  Based on a "clinical history" of "electrical injury to his right shoulder," a physician excused him from work for seven days.

On October 16 (nine days postbattery), Peavy was seen by Kevin Mould, M.D. as a follow up to the October 10 exam and treatment.  The physician's notes state Peavy was seen for neck, back, shoulder, and leg pain "s/p [status post] *'hit with an electrical device.'* "  (Italics added.)[4]  Under "Social History," the medical records states that Peavy denied being a victim of domestic violence:

> "Domestic Violence:
>     VICTIM PHYSICAL/VERBAL ABUSE
>     Victim of verbal or physical abuse?  *No*
>     Date Assessed:  10/16/2018."

About three weeks postincident (October 26), Peavey was examined by John Qian, M.D. for complaints of "constant" pain in the back, left shoulder, neck, and knees that he had been experiencing "for 5 years."  He told Dr. Qian that the pain became worse after being "tased by a friend this past month . . . ."  There is nothing in Dr. Qian's report about the October 7 domestic violence incident.

On November 13, another physician (Sunny Wang, M.D.) examined Peavy for complaints of worsening back pain after he slipped and fell "4 days ago."  Dr. Wang's report does not mention anything about any domestic violence injury.

---

[3]  Peavy was employed as a bus driver.  Apparently, he was tased by a coworker in a prank that might charitably be described as being ill-conceived.

[4]  The medical records also note that Peavy was "suing [a] correctional facility" for injuries to his back and neck he claims occurred "while incarcerated."

C. *Peavy's Victim's Compensation Claim*

In April 2019, Peavy filed an application with the Board seeking lost income from October 11 to October 17, which he claimed was caused by injuries he received in the battery. At his request, the Employment Development Department sent the Board a disability claim Peavy had previously filed. It was signed by Dr. Qian, who stated the disability was caused by an accident or trauma occurring on-the-job beginning in November *2009.*

In February 2020, the Board denied Peavy's claim, determining there was insufficient evidence that he missed work "as a direct result of the qualifying crime." Peavy later pursued an administrative appeal of that decision.[5] He claimed that Dr. Qian "checked the wrong boxes" on the disability form. In June 2020, the Board rejected his appeal citing "a lack of . . . evidence the claimant missed work during the period as a direct result of the crime."

After the Board denied Peavy's request for reconsideration, he filed a petition for a writ of mandate in the superior court.[6] The petition's proof of service bears the signature of Diane N.—the woman who committed the battery. It also indicates that she lives on Orlando Street in El Cajon. Some of the paystubs and a W-2 show that is Peavy's address too.

---

[5]    In the administrative appeal, Peavy enlarged the time of the claimed disability from seven days to four months.

[6]    Peavy was self-represented before the Board, in the superior court, and remains so on appeal.

4

D.    *The Writ Petition*

In his writ petition, Peavy explained that his medical records contain *nothing* about the October 7 crime because he "feared for his life in this case if the abuser found out" he was pursuing a lost income claim.[7]  After the Attorney General filed opposition and the court conducted an unreported hearing, the petition was denied in a minute order stating in part:

> "None of the medical records reported that [Peavy] was injured as a result of domestic violence that occurred on October 7, 2018."

## DISCUSSION

The standard of review of a judgment denying a petition for writ of administrative mandate is the same as that of the trial court when it reviews the determination of the administrative board.  We must determine if the administrative findings are supported by substantial evidence in light of the whole record.  (Code of Civ. Proc., § 1094.5, subd. (c); see also *Blazevich v. State Bd. of Control* (1987) 191 Cal.App.3d 1121, 1125 (*Blazevich*).)[8]

The Legislature has declared it to be in the public interest to assist state residents in obtaining compensation for pecuniary losses suffered as a result of criminal acts.  (§ 13950, subd. (a).)  Accordingly, under specified circumstances the Board may compensate a crime victim for loss of income directly resulting from crime. (See Gov. Code, § 13957.5, subd. (a)(1).)  The

---

[7]    Given that Diane N. (the "abuser") signed the proof of service and she and Peavy shared the same address—that explanation might be met with considerable skepticism.

[8]    Peavy does not have a vested right to crime victim benefits.  (*Blazevich, supra,* 191 Cal.App.3d at p. 1125.)  Thus, we reject his contention that the superior court erred by failing to apply an independent judgment standard of review or to "admit" new evidence for the first time at the hearing.

person seeking compensation has the burden of proof by a preponderance of the evidence. (§ 13959, subd. (c).) First and foremost, the loss must be "verif[ied]" by the applicant's treating health care provider, who "shall" include a "certification that the disability resulted directly from the qualifying crime." (Cal. Code. Regs., tit. 2, § 649.32, subds. (b) & (g).)

We agree with the superior court's assessment of the evidence. None of the medical records reported that Peavy was injured as a result of domestic violence that occurred on October 7, 2018. Therefore, the Board's findings are supported by substantial evidence in light of the whole record.

In his reply brief, Peavy "admits he was unable to get the required" documents to support his lost income claim. He maintains that it was only "after researching it" did he "realize it was the [d]omestic [v]iolence that had cause[d] [his] injury and no medical staff would change their diagnosis 128 days later." Thus, even Peavy concedes the requisite medical evidence was not before the Board and does not exist.[9]

---

[9] Because of this disposition, it is unnecessary to address Peavy's contentions that the Board denied him due process by failing to follow its own hearing procedures, failed to properly investigate his lost income claim, and erroneously failed to compensate him for a preexisting condition exacerbated by the crime. Peavy's reliance on *Brady v. Maryland* (1962) 373 U.S. 83 is misplaced because that case involves the government's suppression of evidence favorable to an accused in a criminal case, not the Board's obligations in considering a lost income application.

DISPOSITION

The judgment is affirmed. Respondent is entitled to costs on appeal.


                                                        DATO, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.